## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STOCKPORT MOUNTAIN** | : | **No. 3:11cv514** |
| **CORPORATION LLC,** | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **NORCROSS WILDLIFE** | : | |
| **FOUNDATION, INC.,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court are two motions brought pursuant to Rule 12 of the Federal Rules of Civil Procedure.  The first motion is Defendant Norcross Wildlife Foundation's Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted.  (Doc. 4).  The second motion is Plaintiff Stockport Mountain Corporation LLC's Rule 12(d) cross-motion for summary judgment.  (Doc. 10).  The parties fully briefed the issues, and the court heard oral argument in this matter on January 13, 2012.  For the following reasons, the court will deny both motions.

**Background**

In March 2002, Stockport Forest Preservation, LLC (hereinafter "SFP") purchased a parcel of land in Buckingham Township, Wayne County, Pennsylvania (hereinafter "the Land").  (Doc. 1, Compl. ¶¶ 5-6 hereinafter "Compl.")).  SFP is a wholly owned subsidiary of Defendant Norcross Wildlife Foundation (hereinafter "defendant"), which is a Massachusetts corporation.  (Id. ¶¶ 2, 6).  On March 15, 2002, SFP

entered into a conservation easement with defendant.  (See id. ¶ 7; Doc. 1-2, Ex. A , Conservation Easement for Stockport Forest (hereinafter "CE")).

The conservation easement seeks to preserve the Land by implementing a series of land use patterns and restrictions that defendant has the power to enforce in perpetuity.  (See CE at 2).  The conservation easement provides in relevant part:

1. Grant Purpose.  Grantor hereby grants and conveys to Grantee a perpetual conservation easement in gross which Grantee accepts for the purpose of preserving the Conservation Values of the Property; the protection of plant life and wildlife biodiversity and the protection of wildlife habitats; and conserving and protecting the Property from soil erosion, water pollution, development, fragmentation, and other occurrences which might interfere with the Property's Conservation Values, or with the beauty and unique character of the Property as it exists in its current state, subject to the qualifications, terms and conditions set forth hereinbelow. . . .

4. Prohibited Uses.  The following activities and uses are expressly prohibited:

a)  All uses and activities in the Conservation Reserve Areas, except as permitted under Section(s) 4(m) and 5(b). . . .

c)  Industrial or commercial uses of any kind, including commercial recreation, except home occupations that do not involve more than two outside employees, and do not involve outside storage of materials or supplies, equipment or products . . . .

d)  Commercial mining and/or quarrying of any kind.  However, quarrying for the personal use of the Grantee, its successors and assigns, and their immediate family shall be permitted, provided it is in compliance with all state regulations.

e)  [Certain timbering activities in compliance with applicable regulations are allowed].

f)  Depositing, dumping, abandoning, or release of any solid waste or debris, or liquid wastes or chemical substances on the

2

Property except that fertilizers, herbicides and pesticides for the purpose of maintaining or improving the growth of vegetation or the conservation of natural resources . . . .

l)  New roads, except to provide low-impact temporary access to logging.  Such temporary roads shall be re-seeded within six months of the cessation of such logging. . . .  Any modifications altering the size or direction of any watercourses, body of water, or wetlands shall be submitted in writing to Grantee for approval before applying for any permits, if required.

m)  [certain hunting and fishing activities are permitted].

(Id. at 2, 4-5).  The conservation easement also purports to be "constructed with the intention of conforming with the requirements for conservation easements under the Pennsylvania Conservation and Preservation Easements Act, Act 29 of 2011."  (Id. at 2).

On April 22, 2002, Plaintiff Stockport Mountain Corporation LLC (hereinafter "plaintiff") purchased the Land from SFP subject to the conservation easement.  (Compl. ¶ 9; Doc. 1-2, Ex. B, Deed).  Plaintiff is a Pennsylvania limited liability company and currently owns the Land. (Compl. ¶¶ 1, 5).  Plaintiff avers that it owns the surface and subsurface rights to the Land in fee simple notwithstanding the restrictions contained in the conservation easement.  (Id. ¶ 9-11).

In 2007, plaintiff learned that natural gas deposits may be located under the Land.  (Id. ¶ 13).  Several oil and natural gas companies have expressed an interest in exploring for natural gas on the Land.  (Id. ¶ 14). Plaintiff asserts that drilling for natural gas, and the subsequent operation of a natural gas well, would minimally impact the Land.  (Id. ¶ 16).  Plaintiff claims that only five of the property's nearly two thousand acres would be

3

affected.  (Id. ¶ 15).  Plaintiff also maintains that the only permanent structure left on the Land will be a well head and valves, commonly referred to as a "Christmas tree."  (Id.)

Plaintiff claims that drilling for natural gas on the Land is consistent with the conservation easement, and on December 19, 2007, plaintiff sought defendant's concurrence in plaintiff's plan to enter into a ten year lease of the Land's subsurface mineral rights.  (Id. ¶¶ 19-22; Doc. 1-2, Ex. C, Letter Dated Dec. 19, 2007).  Defendant disagreed and refused to concur in plaintiff's plan on the basis that natural gas drilling violates the conservation easement.  (Doc. 1-2, Ex. D, Letter Dated Jan. 16, 2008).

For the next several months, the parties continued to communicate in an effort to resolve this dispute; however, defendant maintained its position that natural gas drilling is the type of activity prohibited by the conservation easement.  (Compl. ¶¶ 24-28; Doc. 1-2, Ex. E, Letter Dated Mar. 5, 2008; Ex. F, Letter Dated Mar. 25, 2008; Ex. G, Letter Dated Apr. 21, 2008; Ex. H, Letter Dated May 20, 2008).

On March 18, 2011, plaintiff filed a one count complaint against defendant seeking a declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.*, the Declaratory Judgment Act, that the conservation easement permits surface extraction of natural gas.  (See Compl).  Plaintiff contends that the conservation easement does not prohibit natural gas drilling, which plaintiff argues is treated differently from coal mining under Pennsylvania law.  (See id. ¶¶ 29-39).  Plaintiff further avers that the parties to the

4

conservation easement did not intend for its provisions to prohibit natural gas exploration.  (See id. ¶¶ 44, 46).  Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that a natural gas drilling lease is obviously inconsistent with the conservation easement.  (Doc. 4, Mot. to Dismiss).  In response, plaintiff filed a cross-motion to treat defendant's motion to dismiss as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d),  (Doc. 10, Cross-Mot. for Summ. J.), bringing this case to its current posture.

**Jurisdiction**

This court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332.  Plaintiff is a Pennsylvania limited liability company with a place of business in Pennsylvania.  (Compl. ¶ 1).  Defendant is a Massachusetts corporation with a place of business in New York.  (Id. ¶ 2).  Although this action is one for declaratory relief pursuant to 28 U.S.C. § 2201, the amount in controversy is nevertheless in excess of $75,000 as the potential value of the ten-year lease on the Land is in excess of this amount.  See Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir.1995) ("Where the plaintiff in a diversity action seeks injunctive or declaratory relief, the amount in controversy . . . . is determined by the value of the object of the litigation." (internal quotation omitted)).  Because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00, the court has jurisdiction over the case.  See 28 U.S.C. § 1332.

5

Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 158 (3d Cir. 2000) (citing <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938)). However, "federal courts are to apply state substantive law and federal procedural law." <u>Hanna v. Plumer</u>, 380 U.S. 460, 465 (1965). The instant case is before the court in the form of a declaratory judgment action, and Federal Courts have concluded that declaratory judgment actions are procedural rather than substantive. <u>See</u> <u>Munich Welding, Inc. v. Great Am. Ins., Co.</u>, 415 F. Supp. 2d 571, 574 (W.D. Pa. 2006) (citing <u>Fed. Kemper Ins. Co. v. Rauscher</u>, 807 F.2d 345, 352 (3d Cir. 1986)). As a result, the court will apply substantive Pennsylvania law in interpreting the conservation easement in addition to the procedural strictures of the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

**Discussion**

Both plaintiff and defendant have each filed, briefed and argued separate motions before the court. First, defendant filed a motion to dismiss for failure to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Next, plaintiff filed a cross-motion for summary judgment, pursuant to Federal Rule of Civil Procedure 12(d), on the basis that defendant's motion to dismiss contained improper extrinsic information. Both parties assert that this case will terminate in their favor if the court accepts their arguments. The court, however, holds that it is too early in the litigation to reach the conclusions the parties seek;

6

both motions will be denied.

### A.  Rule 12(d) Motion for Summary Judgment (Doc. 10)

Before the court weighs the parties' arguments on the merits, we will first determine whether defendant's motion to dismiss should be converted into a summary judgment motion.  Federal Rule of Civil Procedure 12(d) allows for courts to decide motions to dismiss as summary judgment motions.  The federal rules specifically provide as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

FED. R. CIV. P. 12(d).

Whether matters outside of the pleadings are considered, and, subsequently, whether the motion to dismiss is converted into a motion for summary judgement, is a matter entrusted to the discretion of the court. See  Kulwicki v. Dawson, 969 F.2d 1454, 1463 n.11 (3d Cir. 1992); Grillo v. John Alden Life Ins. Co., 939 F. Supp. 685, 686 (D. Minn. 1996).  Despite this discretion, the court is nonetheless precluded from converting a Rule 12(b)(6) motion into a Rule 56 motion when it finds that there exists a genuine issue of material fact.  See Kamens v. Summit Stainless, Inc., 586 F. Supp. 324, 328 (E.D. Pa. 1984) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 894, 891 (3d Cir. 1977)).

Plaintiff contends that defendant's motion to dismiss must be converted into a motion for summary judgment pursuant to Rule 12(d)

7

because defendant's motion to dismiss contains "distortions of well-pled allegations of fact, unsupported 'factual' assertions and extrinsic matters not pled in the Complaint."  (Doc. 12, Br. in Resp. to Mot. to Dismiss & in Supp. of Cross-Mot. for Summ. J. at 23).  Plaintiff avers that if the court converts defendant's motion to dismiss into a motion for summary judgment, then summary judgment must be entered for plaintiff.

Plaintiff points to two instances in which defendant allegedly presented matters outside of the complaint in their motion to dismiss, and plaintiff contends that these two instances of alleged extrinsic arguments justify converting the motion to dismiss into a motion for summary judgment.  The first argument plaintiff points to involves abuses defendant alleges will occur on the property if plaintiff is permitted to explore for natural gas.  Specifically, defendant argues that, as a result of entering into a gas drilling lease, there would "necessarily be significant disturbance of the Land during the construction activities necessary to construct the well and pipelines, none of which could be accomplished without the use of commercial vehicles and equipment, the construction of roads, and the clearing of portions of the Land protected by the Conservation Easement." (Doc. 5, Br. in Supp. Mot. to Dismiss at 14).  Although defendant has not attached any extrinsic evidence in support of this argument regarding gas drilling's impact on the Land, plaintiff nonetheless asserts that this argument exceeds the complaint's allegations.  (See Doc. 34, Oral Arg. Tr. at 21).

Plaintiff also contends that defendant's arguments regarding the release of chemicals justifies converting the motion to dismiss into a motion for summary judgment.  In its complaint, plaintiff offers the following hypothetical: "If Norcross were to allege that the fracking process of natural gas extraction would be violative of Section 4(f)'s prohibition on the release of chemical substances on the Land, such an interpretation of this prohibition was never intended by the parties . . . ."  (Compl. ¶ 44). Defendant cites to this paragraph from the complaint and asserts that plaintiff "acknowledges that the fracking process of natural gas extraction would involve the release of chemical substances on the Land."  (Doc. 5, Br. in Supp. Mot. to Dismiss at 15).  Defendant further contends that the complaint should be dismissed in light of this acknowledgment because the release of chemicals on the Land violates the conservation easement. Plaintiff asserts that this argument regarding the release of chemicals on the ground represents defendant's effort to deliberately change the facts alleged in the complaint.  (See Doc. 34, Oral Arg. Tr. at 21).

Despite plaintiff's assertions to the contrary, the court is not convinced that defendant's arguments represent a deliberate attempt to rely upon evidence that is extrinsic to the complaint.  Unlike the cases plaintiff cites in support of its Rule 12(d) argument, defendant in the instant case has not attached extrinsic evidence as an exhibit in furtherance of the motion to dismiss.  See  Hilfirty v. Shipman, 91 F.3d 573, 578 (3d Cir. 1996) (affirming the district court's conversion of a motion to dismiss into a

motion for summary judgment in light of the district court's consideration of four affidavits attached by the defendant to its brief); <u>Fed. Ins. Co. v. Uni-Marts LLC</u>, No. 3:07-01357, 2008 WL 2466280, at *2-3 (M.D. Pa. June 18, 2008) (converting a Rule 12(c) motion into a motion for summary judgment when the defendant attached affidavits containing information external to the pleadings to its brief).  In fact, plaintiff concedes that it cannot cite to a case in which a court has converted a Rule 12(b)(6) motion to dismiss into a motion for summary judgment in the absence of the attachment of such exhibits.  (Doc. 34, Oral Arg. Tr. at 20-21).

Defendant denies plaintiff's allegation that it relies upon material extrinsic to the complaint.  Defendant argues that it is too early in the litigation to grant summary judgment. Furthermore, defendant asserts that the court should simply exercise its discretion and disregard any arguments that rely upon material extrinsic to the complaint.

The court agrees with defendant.  The arguments presented in defendant's brief in support of its motion to dismiss are not premised on evidence extrinsic to the complaint.  Rather, defendant presents inferences based on the facts pled in the complaint.  To the extent that these inferences rely on facts not contained in the complaint, the court will not consider them in deciding the motion to dismiss. Therefore, the court will decline to convert defendant's Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.

**B.  Rule 12(b)(6) Motion to Dismiss (Doc. 4)**

Defendant asserts that the court should dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted.  Defendant claims that dismissal of the complaint is warranted because drilling activities on the Land violates "the express prohibitions and purposes of the Conservation Easement." (Doc. 5, Br. in Supp. of Mot. to Dismiss at 12).  The court disagrees and defendant's motion to dismiss will be denied.

**1. Standard of Review for Rule 12(b)(6) Motions**

Defendant brings this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6).  When a 12(b)(6) motion is filed, the sufficiency of the allegations in the complaint are tested.  The Court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir.1985).

To survive a motion to dismiss, the plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 500 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the

11

pleadings to the next stage of litigation." Id. at 234-35.  In evaluating the

sufficiency of a complaint the court may also consider "matters of public

record, orders, exhibits attached to the complaint and items appearing in

the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38

F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not

have to accept legal conclusions or unwarranted factual inferences.  See

Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130,

133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902,

906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "'a short and plain

statement of the claim showing that the pleader is entitled to relief,'" a

standard which "does not require 'detailed factual allegations,'" but a

plaintiff must make "'a showing, rather than a blanket assertion, of

entitlement to relief' that rises 'above the speculative level.'"  McTernan v.

City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Twombly, 550 U.S.

at 555-56).  The "complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550

U.S. at 570).  Such "facial plausibility" exists "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  Id. (citing Twombly,

550 U.S. at 556).  "[T]he factual detail in a complaint [cannot be] so

undeveloped that it does not provide a defendant the type of notice of

12

claim which is contemplated by Rule 8." <u>Phillips</u>, 515 F.3d at 232 (citation omitted).

The Supreme Court has counseled that a court examining a motion to dismiss should, "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>, 129 S. Ct. at 1950.  Next the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." <u>Id.</u> at 1951.

### 2. The Sufficiency of Plaintiff's Claim for Declaratory Relief

Defendant contends that the court should dismiss the complaint because the activity plaintiff seeks to engage in on the Land–hydrofracture natural gas drilling–violates the express language of the conservation easement.  Defendant asserts that, despite not being enumerated as a prohibited activity in the conservation easement, hydrofracture drilling is nonetheless prohibited given Pennsylvania's preference for liberally construing conservation easements.[1]

It is well established in Pennsylvania that courts will first look to the language of a contract when attempting to determine the parties' intent, and when the language of the contract is unambiguous, courts will enforce

---

[1] <u>See</u> 32 PA. CONS. STAT. ANN. § 5055(c)(2) ("Any general rule of construction to the contrary notwithstanding, conservation or preservation easements shall be liberally construed in favor of the grants contained therein to effect the purpose of those easements and the policy and purpose of this act).

13

the express language of the contract as it embodies the intent of the parties.  See Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982); see also Crawford Cent. Sch. Dist. v. Commonwealth, 888 A.2d 616, 623 (Pa. 2005) (noting that "[w]hen contractual language is clear and unequivocal, its meaning must be determined by its contents alone.").  Courts apply the same rules of construction to easement grants as they do to contracts. See Zettlemoyer v. Transcontinental Gas Pipeline Corp., 657 A.2d 920, 924 (Pa. 1995) (citing Sigal v. Mfrs. Light & Heat Co., 299 A.2d 646, 649 (Pa. 1973); Percy A. Brown & Co. v. Raub, 54 A.2d 35, 43 (Pa. 1947)).

        Defendant contends that the conservation easement is unambiguous and that the complaint fails to allege sufficient facts to warrant the relief requested in light of the easement's clear language.  Defendant specifically claims that gas drilling on the Land clearly and unambiguously violates four provisions of the conservation easement.  First, defendant asserts that gas drilling on the Land would constitute industrial or commercial activity, which is expressly prohibited by section 4(c).  Second, defendant proffers that gas drilling on the Land will require depositing chemicals, which is prohibited by section 4(f).  Third, defendant contends that any new drilling activity would require the construction of new roads and supporting structures, which is prohibited by section 4(l).  Finally, defendant asserts that drilling will violate the purpose of the conservation easement as embodied in section 1.

        The court disagrees and finds that the declaratory relief plaintiff

14

seeks is not clearly and unambiguously prohibited by the conservation easement.  Rather, the court finds that crucial provisions of the conservation easement are ambiguous, and that plaintiff's request for declaratory relief is not plainly impermissible, when the facts alleged in the complaint are viewed as true.

For example, section 1 of the conservation easement states in part that the easements' purpose is to conserve and protect the Land "from soil erosion, water pollution, development, fragmentation and other occurrences which might interfere with the Property's Conservation Values, or with the beauty and unique character of the Property . . . ."  (CE at 2).  Although this statement outlines the parties' aspirations, the court cannot determine at this stage in the litigation that this provision prohibits natural gas drilling because it is too vague.  The beauty and character of the Land are subjective concepts.  Additionally, the Land's "Conservation Values" are not known at this time as they are not attached as an exhibit to the complaint.  The court also notes the conservation easement's express approval of many activities that are contrary to its purpose, such as allowing limited timbering, quarrying, ATV / snowmobile use and the construction of four residences.  (See id. 4-6).  Therefore, at this stage in the litigation, it is premature for the court to find that natural gas drilling clearly violates section 1 of the conservation easement.

Similarly, it is premature for the court to rule that plaintiff's plan to enter into a lease to drill for natural gas violates section 4 the conservation

15

easement.  With respect to section 4(c), it is alleged in the complaint that the conservation easement was not created with the intent of broadly prohibiting all commercial and industrial uses as it allows for a wide range of such uses in other portions of the document.  (Compl. ¶¶ 40-42).  The court finds that this approval of certain commercial and industrial activities, combined with the fact that the terms "industrial" and "commercial" are not defined in the conservation easement, create an ambiguity in section 4(c) that reasonably requires discovery to resolve.

Furthermore, the court finds that plaintiff has adequately pled facts creating an ambiguity with respect to sections 4(f) and 4(l) of the conservation easement.  Plaintiff pled that natural gas exploration would result in "disturbance of the Land itself of limited duration and extent."  (Id. ¶ 16).  Plaintiff further clarified that the construction of new roads would be largely unnecessary as the drillers would use existing roads when possible.  (Id. ¶ 22; Doc. 1-2, Ex. C, Letter Dated Dec. 19, 2007).  Additionally, with respect to the release of chemicals, plaintiff alleges in the complaint that the parties to the conservation easement were not concerned with the release of subsurface chemicals, and that the parties only intended to prohibit the release of chemicals on the surface.  (Id. ¶¶ 44, 46).

Although defendant disagrees with the above-referenced alleged facts regarding the ambiguities of section 4(f) and 4(l),[2] the court must

_____

[2] Defendant disagrees with plaintiff's allegation that the drilling would cause only  minimal disturbances and argues that "there would, of course,

16

accept them as true at this stage in the proceedings.  See Angelastro, 764 F.2d at 944.  Plaintiff alleges that the parties to the conservation easement intended to allow activity below the surface of the Land, such as natural gas pipelines and drilling, so long as those activities did not cause environmental destruction on the surface.  This allegation is not obviously inconsistent with the conservation easement, which does not expressly prohibit subsurface drilling.  Therefore, the court finds that plaintiff has pled sufficient facts regarding ambiguities in section 4 to survive defendant's motion to dismiss.

**Conclusion**

For the above-stated reasons, both of the motions before the court will be denied.  An appropriate order follows.

---

necessarily be significant disturbance of the Land . . . ."  (Doc. 5, Br. in Supp. Mot. to Dismiss at 14).  Defendant also made clear its disagreement with plaintiff's allegation that the parties never intended to prohibit subsurface use of chemicals.  (See Doc. 34, Oral Arg. Tr. at 10).

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STOCKPORT MOUNTAIN** | : | **No. 3:11cv514** |
| **CORPORATION LLC,** | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **NORCROSS WILDLIFE** | : | |
| **FOUNDATION, INC.,** | : | |
| **Defendant** | : | |

## ORDER

**AND NOW**, to wit, this 1st day of March 2012, it is hereby **ORDERED** as follows:

1.  Defendant's motion to dismiss the complaint (Doc. 4) is **DENIED**; and

2.  Plaintiff's cross-motion for summary judgment (Doc. 10) is **DENIED**.

**BY THE COURT:**

 **s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**